IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**WAR EAGLE FARMS, LLC, et al.**                                                 **PLAINTIFFS**

**V.**                                               **NO. 4:22-CV-58-DMB-DAS**

**AMERICAN AGRI-BUSINESS
INSURANCE CO., et al.**                                               **DEFENDANTS**

**OPINION AND ORDER**

The defendants move to transfer this action from the Greenville Division to the Oxford Division based on their filing of a related case nine days before the plaintiffs commenced this action. Alternatively, the defendants move to dismiss for improper venue. Because venue is proper in the Northern District of Mississippi and the defendants have not shown that the Oxford Division is a clearly more convenient forum than the Greenville Division, the motion will be denied.

**I
Procedural History**

On April 15, 2022, the plaintiffs[1] filed a complaint in the Greenville Division of the United States District Court for the Northern District of Mississippi against American Agri-Business Insurance Co., AgriSompo North America, Inc., and "John Does 1-10." Doc. #1. The complaint alleges that the defendants caused the plaintiffs financial injury when they failed to pay insurance claims under identical policies issued to each plaintiff and asserts causes of action

---

[1] The caption lists the plaintiffs in five groups: (1) "War Eagle Farms, LLC and Kate's Hope, LLC (d/b/a Coldwater Planting Company, a General Partnership), and William Brennan Chapman;" (2) "Hubert Evans Wolfe, Jr., Kristopher Wolfe, Arthur Wolfe, HKA, Inc., and WWW, Inc. (d/b/a Brazil Planting Company, a General Partnership);" (3) "Will, Inc., Pat, Inc., and Ashely Dean, Inc. (d/b/a Pushen & Pullen Farms, a General Partnership);" (4) "J.J. Webb, III, J.J. Webb, IV and Webb & Webb, Inc. (d/b/a Webb Farms, a General Partnership);" and (5) "Kenny Weeks and Sherry Weeks (d/b/a M&W Farms, a General Partnership)." Doc. #1 at 1. In response to a show cause order questioning subject matter jurisdiction based on the complaint's identification of some of the plaintiffs, the plaintiffs subsequently "amend[ed] the style of the case to omit the use of parentheses and substitute 'and' for 'd/b/a' each time that term is used in reference to a general partnership." Doc. #14 at 1.

for (1) fraud and misrepresentation; (2) negligence and gross negligence; (3) breach of contract and tortious breach of contract; and (4) bad faith and systemic bad faith. *Id.*

Approximately one month later, on May 12, 2022, the defendants filed a motion "to transfer venue to the United States District Court for the Northern District of Mississippi, Oxford Division, under 28 U.S.C. § 1404 based on the first-to-file doctrine or, in the alternative, to dismiss Plaintiffs' Complaint for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406." Doc. #6. The motion is fully briefed. Docs. #7, #10, #11.

## II
## Venue

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

> A motion to transfer venue pursuant to § 1404(a) should be granted if the movant demonstrates that the transferee venue is clearly more convenient, taking into consideration (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (cleaned up). These factors "apply as much to transfers between divisions of the same district as to transfers from one district to another." *Id.*

> Section 1406(a) provides that the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the

> interest of justice, transfer such case to any district or division in which it could have been brought. Rule 12(b)(3) states that a party may move to dismiss a case for improper venue. These provisions therefore authorize dismissal only when venue is wrong or improper in the forum in which it is brought.

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Tex.*, 571 U.S. 49, 55 (2013). When reviewing a motion under Rule 12(b)(3), courts must "view all the facts in a light most favorable to the plaintiff" and are "permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 580 F.3d 233, 237–38 (5th Cir. 2009).

### III
### Factual Allegations

The plaintiffs "are agricultural producers of corn operating separate farms in Leflore County, Mississippi, Tallahatchie County, Mississippi and Quitman County, Mississippi." Doc. #1 at ¶ 11. The defendants "are among the largest sellers and servicers of crop insurance in the country." *Id.* at ¶ 24.

"In 2020, Plaintiffs each purchased a crop hail insurance policy and supplemental crop insurance policy from Defendants … to insure against risk of loss in the 2021 crop year." *Id.* at ¶ 36. The policies "included an optional 'wind plus' endorsement," which added "specified perils, including 'green snap,' to the policy coverage in return for the payment of an additional premium." *Id.* at ¶¶ 37–38. The plaintiffs paid the additional premium to secure coverage for green snap. *Id.* at ¶ 39. Under the policies' definitions, "green snap occurs when a corn stalk is severed or broken above the brace root and below the ear node from wind such that an ear is prevented from forming or the ear cannot be mechanically harvested." *Id* at ¶ 43 (internal quotation marks omitted). The endorsement excluded coverage "for a corn stalk that has not been severed or broken." *Id.* (internal quotation marks omitted).

3

After "a number of their corn stalks were severed or broken by wind prior to harvest," the plaintiffs each filed a claim for benefits under the policies and the defendants denied each claim. *Id.* at ¶¶ 39-40. The defendants "alleg[ed] water played an indirect role in causing the corn stalks to become severed or broken." *Id.* at ¶ 41. While "[t]he exclusions contained in the endorsement state that coverage is not provided for reduced yield due to [certain] types of indirect damages," "[w]ater is not one of the types of indirect damage listed in the endorsement." *Id.* at ¶¶ 49–50.

After the defendants denied the claims, they "tried to coerce Plaintiffs into executing a withdrawal, release or waiver of their claims to the policy benefits then attempted to convince Plaintiffs that binding, non-judicial appraisal was the only means of resolving the coverage disputes." *Id.* at ¶ 56.

## IV
## Analysis

Although the defendants request dismissal for improper venue as alternative relief, dismissal is warranted only if venue is "wrong or improper" because the Court can transfer the case to the proper venue in the interest of justice. So the Court will first address whether venue is proper and, if it is, then determine whether a transfer is warranted.

### A. Proper Venue

The defendants argue the Greenville Division is an improper venue because "a substantial part of the events giving rise to Plaintiffs' claims did not occur in the Greenville Division." Doc. #7 at 5–6. The plaintiffs respond that venue is proper because the defendants admit that a "small amount of the total acreage at issue is located in the Greenville Division" and "the mere fact that another division may have more contacts with the litigation is, in itself, insufficient to disturb [their] choice of venue." Doc. #10 at PageID 148–49. The defendants reply that the plaintiffs have failed to meet their burden of showing the Greenville Division is a proper venue because

they concede "the only connection … is 51.8 acres of allegedly damaged corn acres out of a total of 2,084 acres" and "[s]uch minimal connection hardly meets the 'substantial part' requirement of § 1391." Doc. #11 at 4–5.

Under 28 U.S.C. § 1391(b)(2), "[a] civil action may be brought in … a judicial district in which a substantial part of the events giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[2] The parties' arguments here focus on the "substantial part" language of § 1391 while ignoring that § 1391 provides in which *district* an action may be brought, rather than in which *division*. "For the past thirty years, the federal courts have uniformly held that because § 1391 does not distinguish between the divisions of a judicial district, venue properly lies in any division of an otherwise-appropriate judicial district." *Garrett v. Hanson*, 429 F. Supp. 3d 311, 315 (E.D. Tex. 2019) (internal quotation marks omitted) (collecting cases). Because the parties do not dispute that the events giving rise to the plaintiffs' claims occurred in the Northern District of Mississippi, venue in the Northern District of Mississippi is proper and dismissal is not warranted.

### B. Transfer

In support of their request to transfer, the defendants argue that they filed a separate petition to select an umpire under insurance policies issued to the plaintiffs, *AgriSompo North America, Inc. v. Coldwater Planting Company, et al.*, No. 3:22-cv-51-MPM-RP (N.D. Miss. April 6, 2022) ("Umpire Action"); the plaintiffs' claims in this case "arise out of the same exact insurance policy" at issue in the Umpire Action; "[t]hough the relief requested in the suits may be different, such relief is inextricably linked;" and because the Umpire Action was filed nine days before this case, "the Court should transfer this case to the Oxford Division under the first-

---

[2] The remaining provisions of § 1391(b) are not relevant here.

to-file rule." Doc. #7 at 2–5.

The plaintiffs respond that if the first-to-file rule applies, the defendants' motion "must still be denied because the first court with jurisdiction should decide whether a subsequent case involving essentially identical issues may proceed and, in this case, the first court with jurisdiction was in the Oxford Division." Doc. #10 at PageID 144–45. They next argue the first-to-file rule does not apply because the complaint here "pleads claims for fraud, misrepresentation, negligence, gross negligence, breach of contract, tortious breach of contract, bad faith and systemic bad faith, while the Petition [in the Umpire Action] merely seeks the appointment of a neutral third-party to settle a *non-existent* dispute over the total number of damaged crop acres at issue." *Id.* at PageID 145.

The defendants reply that their motion was filed in the proper court because a determination as to whether the case should proceed "is made after the second-filed case is transferred to the first-filed court;" both cases "arise from the exact same set of circumstances and relate to the exact same insurance policy" so they "would be consolidated if they were filed in the same Division;" and "no compelling circumstances exist" as to why they should not be consolidated. Doc. #11 at 2–4 (emphasis omitted).

> The first-to-file rule is a discretionary doctrine that may be applied when related cases are pending before two federal courts. If there is substantial overlap between the two cases, the court in which the case was last filed may refuse to hear it. This allows the court in which the action is first filed to determine whether subsequently filed cases involving substantially similar issues should proceed. The rule rests on principles of comity and sound judicial administration. It is aimed at maximizing judicial economy and minimizing embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court.

*Green Tree Servicing, L.L.C. v. Clayton*, 689 F. App'x 363, 367 (5th Cir. 2017) (cleaned up) (citing various cases).

Here, the parties do not dispute that the plaintiffs' claims in this case arise from the same insurance policies as in the Umpire Action. It seems then there may be a substantial overlap that could warrant transfer. However, on November 4, 2022, United States District Judge Michael P. Mills dismissed the Umpire Action.[3] *See AgriSompo North America, Inc. v. Coldwater Planting Co. et al*, No. 3:22-cv-51-MPM-RP, at Doc. #16. Because dismissal of the Umpire Action eliminates any risk of inconsistent rulings and because the defendants otherwise fail to address the factors relevant to whether a transfer under § 1404(a) is warranted, they fail to carry their burden of showing the Oxford Division is "clearly more convenient" than the Greenville Division. *See Garrett*, 429 F. Supp. 3d at 317 ("Absent such a showing, the plaintiff's choice of venue is to be respected."). The motion to transfer is properly denied.

## V
## Conclusion

The defendants' motion to transfer or, alternatively, dismiss [6] is **DENIED**.

**SO ORDERED**, this 22nd day of November, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[3] In doing so, Judge Mills noted that "a civil action is presently pending in the Greenville Division which seeks to litigate the insurance coverage issues in this case … and … conclude[d] that this is the proper forum for the parties to resolve their disputes." *AgriSompo North America, Inc.*, No. 3:22-cv-51-MPM-RP, at Doc. #16 at 3.